UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

| | | |
|---|---|---|
| AL JAZEERA INTERNATIONAL | ) | |
| Al Jazeera Satellite Network Building | ) | |
| 23127 Khalifa Street | ) | |
| Doha, Qatar | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:  8:13-cv-2769 |
| | ) | |
| DOW LOHNES PLLC | ) | |
| 1200 New Hampshire Avenue, NW | ) | |
| Suite 800 | ) | |
| Washington, DC 20036 | ) | |
| | ) | |
| Serve on: Resident Agent | ) | |
| John T. Byrnes, Jr. | ) | |
| 1200 New Hampshire Ave., NW | ) | |
| Washington, DC 20036 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| LESLIE H. WIESENFELDER | ) | |
| 4812 Cumberland Avenue | ) | |
| Chevy Chase, Maryland 20815 | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT

Plaintiff, Al Jazeera International ("AJI" or "Plaintiff"), by its undersigned counsel, files

this Complaint against Defendants, Dow Lohnes PLLC ("Dow") and Leslie H. Wiesenfelder

("Mr. Wiesenfelder"), and in support states:

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff AJI is a division of Al Jazeera Media Network (formerly known as Al Jazeera Satellite Network), an entity organized under the laws of the Government of the State of Qatar with its principal place of business located in Doha, Qatar.

2.      Defendant Dow is a District of Columbia professional limited liability company that engages in the practice of law with its principal place of business located at 1200 New Hampshire Avenue, NW, Suite 800, Washington, DC 20036.  Dow employs approximately sixteen lawyers licensed to practice law in Maryland and, through its agents, engages in the practice of law in Maryland with a continuous and systematic presence that subjects Dow to the personal jurisdiction of Maryland, generally.

3.      Defendant Mr. Wiesenfelder is an attorney who is domiciled at 4812 Cumberland Avenue, Chevy Chase, Maryland 20815.  At all relevant times, Mr. Wiesenfelder was a principal of Dow and was domiciled in Maryland.

4.      There is complete diversity of citizenship between Plaintiff and Defendants.

5.      The matter in controversy exceeds the value of $75,000.00, exclusive of interest, fees, and costs.

6.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(2).

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1).

8.      Personal jurisdiction is proper as to Mr. Wiesenfelder pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-102(a) because Mr. Wiesenfelder is domiciled at 4812 Cumberland Avenue, Chevy Chase, Maryland 20815.

9.      Personal jurisdiction is proper as to Dow pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1) & (4) because Dow directly and through its agents continuously and

systematically transacts business and performs work in Maryland; and because Dow caused

tortious injury outside of Maryland by an act or omission outside of Maryland; and Dow

regularly does or solicits business and engages in persistent conduct in Maryland; and Dow

derives revenue from services provided in Maryland.  Dow engages in the practice of law in state

and federal courts located in Maryland through its agents licensed to practice in Maryland, and

upon information and belief, Dow represents clients that are domiciled in or carry on business in

Maryland; and Dow provides legal advice to such clients in Maryland.

## FACTS

10.　　In 2005, AJI and a Washington, DC- based construction company, Winmar, Inc.

("Winmar"), entered into a contract (the "Winmar Contract") for the construction of a state-of-

the-art television studio and offices for AJI in Washington, D.C. (the "Project").  Work began on

the Project on or about October 16, 2005.  The parties formally entered into the Winmar Contract

on or about November 23, 2005.

11.　　Janson Design Group (the "Architect"), was the architect for the Project.

12.　　The Winmar Contract established a payment process under which Winmar would

submit periodic applications for payment for review by the Architect as AJI's agent.  If satisfied

with the applications, the Architect would issue Certificates of Payment to AJI.  Section 5.1.1 of

AIA Document A101-1997 of the Winmar Contract provides that "based upon Applications for

Payment submitted to the Architect by the Contractor and Certificates for Payment issued by the

Architect, the Owner shall make progress payments on account of the Contract Sum to the

Contractor."

13.　　The Architect owed AJI a duty of care in reviewing and approving payment

applications submitted by Winmar.

14.     Pursuant to the Winmar Contract, Winmar made the following payment applications: (1) October 20, 2005 Application No. 2, claiming that Winmar was owed $474,677.00 for work performed for the period ending October 31, 2005; (2) October 20, 2005 Application No. 2b, claiming that Winmar was owed $115,872.00 for additional work performed in the period ending October 31, 2005; (3) November 21, 2005 Application No. 3, claiming that Winmar was due $775,913.00 for work performed in November, 2005; and (4) December 7, 2005 Application No. 1, claiming that Winmar was owed $471,678.00 for work performed on change orders through December 7, 2005 (collectively, are the "Winmar Payment Applications").

15.     On December 7, 2005, the Architect certified the Winmar Payment Applications for the amounts requested by Winmar.

16.     In certifying the Winmar Payment Applications, the Architect breached the duty of care it owed to AJI by not taking reasonable steps to determine whether the Winmar Payment Applications were accurate and complete.

17.     AJI justifiably relied on the Architect's Certificates of Payment and on December 12, 2005, paid Winmar $474,677 pursuant to Payment Application No. 2.

18.     But for the Architect's certification of Payment Application No. 2, AJI would not have paid Winmar $474,677.

19.     On December 22, 2005, Winmar sent AJI a Notice of Default and Direction to Cure alleging that AJI was in material breach of the Winmar Contract for failure to pay the remaining amounts certified by the Architect.

20.     AJI engaged Mark G. Anderson Consultants ("Anderson") as construction manager on the Project to resolve the disputed billing issues. After investigating the matter,

Anderson concluded that Winmar had overbilled AJI.  Thereafter, AJI made no further payments to Winmar.

21.     On January 5, 2006, the Architect sent a letter to Winmar, rescinding its certification of Payment Application Nos. 1, 2b, and 3 in the aggregate amount of $1,363,463. The Architect's letter stated that its Certificates of Payment had been issued "in error" and were withdrawn on account of "a number of discrepancies in the … Application documents, as well as the lack of appropriate supporting documentation."  The Architect asked Winmar for additional documents supporting the Winmar Payment Applications, which Winmar refused to provide. The Architect's admission that it certified the Winmar Payment Applications "in error" put Defendants on notice that AJI had a potential claim against the Architect for breach of the Architect's contract with AJI and for professional malpractice.

22.     Thereafter, AJI terminated the Winmar Contract for convenience pursuant to Section 14 of AIA Document A201-1997 of the Winmar Contract.

23.     On July 24, 2006, AJI's bank, Qatar National Bank, filed suit against Winmar in a case captioned *Qatar National Bank v. Winmar, Inc.*, United States District Court for the District of Columbia Case No. 06-cv-01307 (the "Winmar Litigation").  Winmar filed a third-party complaint against AJI on October 2, 2006, alleging that AJI breached the Winmar Contract by not making payment pursuant to the Architect's Certifications of Payment.

24.     AJI retained Defendants to represent AJI in the Winmar Litigation.  Thereafter, AJI began to incur substantial legal fees that AJI paid to Defendants in connection with the Winmar Litigation.

25.     Defendants filed an answer to Winmar's third-party complaint and a counterclaim against Winmar on AJI's behalf on February 1, 2007, denying any liability and asserting that AJI

had overpaid Winmar $261,919.00 pursuant to the termination for convenience provisions of the Winmar Contract.[1]

26.     In its answer to AJI's counterclaim, Winmar alleged that prior to the time AJI terminated the Winmar Contract for convenience, AJI had materially breached the Winmar Contract, and Winmar was therefore entitled to the full amount of every Winmar Payment Application certified by the Architect, thus raising a substantial material issue regarding the accuracy of the Architect's Certificates of Payment.

27.     Despite the fact that the accuracy of the Architect's Certificates of Payment was a major issue in Winmar's case against AJI, Defendants failed to investigate the Architect's role in the events that led up to the Winmar Litigation, including whether the Architect breached the duty of care it owed to AJI in certifying the Winmar Payment Applications.  Indeed, in their representation of AJI in the Winmar Litigation, Defendants ignored the Architect's role in the dispute entirely.

28.     Defendants' failure to investigate the Architect's role in the dispute between AJI and Winmar was a fundamental breach of the standard of care applicable to Defendants' representation of AJI in the Winmar Litigation.

29.     By completely ignoring Winmar's allegations regarding the Architect, Defendants left AJI with no factual defense to Winmar's principal claim – *i.e.,* that the Architect's Certificates of Payment were *prima facie* evidence that the amounts Winmar claimed were due from AJI.

30.     A reasonably competent lawyer would have determined prior to trial whether the Architect could reasonably explain why it issued the Certificates of Payment "in error."

---

[1] At the time of trial, the amount sought by AJI in its counterclaim against Winmar was $262,146.50.

31.     Having made such a determination, a reasonably competent lawyer would have advised AJI to either (a) call the Architect as a witness in the Winmar Litigation if the Architect's testimony would support AJI's defense; or (b) bring a third-party complaint against the Architect for breach of the duty of care that the Architect owed to AJI.  Defendants did neither.

32.     As a result of Defendants' failure to investigate the Architect's role in the underlying events of the Winmar Litigation, Defendants were completely unprepared at trial to respond to the issue of the Architect's payment certifications, leaving their client, AJI, completely exposed to Winmar's claims based on the Architect's Certificates of Payment.

33.     The trial took place over three days, beginning on June 30, 2010.  From the outset, it was apparent that Defendants were not prepared to deal with the issue of the Architect's payment certifications and the Architect's subsequent attempt to rescind them.  Winmar's counsel made the Architect's role the central theme of its case during his opening statement. When Mr. Wiesenfelder failed even to mention the Architect in his opening statement, the Court raised the issue, prompting this exchange:

THE COURT:
> But that decision is ultimately made, and correct me if I'm wrong, by the architect that you have hired who has to certify how much was done, am I right about that, or no?

MR. WIESENFELDER:
> No.  That is Winmar's position.  Al Jazeera's position is that the architect's certification has absolutely nothing whatsoever to do with the amount of money that Winmar is entitled to under a termination for convenience provision.  The role of the architect is to certify during the performance of the contract monies that the architect believes should be paid to Winmar.  It is correct that the certifications were made, and the architect attempted to subsequently rescind them.  *Al Jazeera does not take a position as to whether that was valid or not.* (emphasis added).

34.     The Defendants' "head in the sand" approach to the Architect unnecessarily created an insurmountable problem for AJI throughout the trial. Winmar continually raised the issue of the Architect's Certificates of Payment and subsequent rescission, to which Defendants offered no rebuttal.  Indeed, several witnesses called by Defendants on AJI's behalf, when cross examined by Winmar and when questioned by the Court, sharply criticized the Architect.  If Defendants had evaluated the Architect's role, they would have been in a position to either (a) call the Architect as a witness who would offer a reasonable explanation for its actions; or (b) point the finger at the Architect as a third-party defendant whose breach of the duty of care it owed to AJI rendered the Architect liable to AJI for Winmar's claims.  Instead, because the Architect was neither a witness nor a party in the Winmar Litigation, the witnesses' testimony bolstered Winmar's contention that AJI's failure to pay Winmar promptly after the Architect's certifications was a material breach of the Winmar Contract.

35.     On September 29, 2010, the Court issued a Memorandum Opinion finding that AJI materially breached the Winmar Contract and that Winmar's damages claim for breach of contract was not precluded by AJI's termination of the Winmar Contract for convenience.  The Court also found that Winmar was entitled to restitution damages, based on the amounts certified for payment by the Architect and not paid by AJI.

36.     The Court noted that "… Al Jazeera produced no evidence at trial to show how the Architect decided to certify Winmar's Payment Applications.  In the absence of any evidence from Al Jazeera *that the Architect neglected its duties* under the Contract in making the certification decisions, the certified Payment Applications are the most reliable evidence of the services performed by Winmar in the periods covered." (emphasis added).

37.     The Court also stated "[t]he Court has never been able to understand why neither party ever called the Architect to testify."

38.     The Court entered judgment in favor of Winmar and against AJI in the amount of $1,472,625.50.

39.     Thereafter, on January 26, 2012, the Court ordered AJI to pay Winmar's attorney's fees of $107,553.32. Because the September 29, 2010 Memorandum Opinion did not resolve all issues, the judgment did not become final until March 13, 2012. Pre-judgment interest accrued at an annual rate of 12% from March 9, 2006 through March 13, 2012, and post-judgment interest began accruing thereafter.

40.     Defendants appealed the judgment to the United States Court of Appeals for the District of Columbia Circuit on behalf of AJI. While the appeal was pending post-judgment interest continued to accrue and AJI continued to incur legal fees.

41.     In order to avoid additional post-judgment interest and legal fees, which combined with the judgment would have exceeded $3,000,000.00, AJI decided to settle the dispute with Winmar by paying Winmar $2,000,000.00 rather than run the risk of an unfavorable outcome on appeal.

42.     By settling the Winmar Litigation, AJI reasonably mitigated its damages.

43.     A reasonably competent attorney would have determined whether the Architect could offer a reasonable explanation for rescinding the Certificates of Payment and, if so, would have deposed the Architect *de bene esse* or called the Architect as a witness at trial in order to provide evidence to rebut the presumption relied upon by the Court that the Architect's certification of the Winmar Payment Applications was the most reliable evidence that the work

described in the Winmar Payment Applications was completed and that AJI owed Winmar the amounts certified by the Architect.

44. In the alternative, a reasonably competent attorney would not have ignored Winmar's allegations regarding the Architect's Certifications of Payment and would have advised AJI that the Architect should be brought into the Winmar Litigation as an adverse party for having breached the standard of care that the Architect owed to AJI in reviewing and certifying the Winmar Payment Applications.

45. Defendants' failure to follow either course breached the standard of care owed by Defendants to their client, AJI.

46. At all times relevant to this matter, Defendants were AJI's attorneys.

47. As AJI's attorneys, Defendants owed AJI a duty of care to conduct a thorough and competent investigation of the facts and circumstances surrounding AJI's dispute with Winmar, and to exercise sound and reasonable judgment in planning and executing a defense to Winmar's claims against AJI.

48. Defendants breached the duty of care they owed to their client, AJI, by ignoring Winmar's allegations regarding the Architect's Certificates of Payment and failing to depose the Architect *de bene esse* or calling the Architect as a witness at trial. But for Defendants' failure to depose or call the Architect as a witness, AJI would have prevailed in the Winmar Litigation.

49. In the alternative, Defendants breached the duty of care by failing to advise AJI to join the Architect as a third-party defendant in the Winmar Litigation based on the Architect's breach of the standard of care it owed to AJI. Defendants' breach of the standard of care left AJI with no defense to Winmar's claims regarding the Architect's payment certifications.

50.     As a result of Defendants' breach of the standard of care, AJI suffered damages. In addition to the $2,000,000 AJI paid Winmar to settle the Winmar Litigation, AJI was deprived of $262,146.50 that it should have been awarded from Winmar at trial.  AJI also paid Defendants hundreds of thousands of dollars in legal fees and costs to defend AJI in the Winmar Litigation.

51.     But for Defendants' breach of the standard of care, AJI would not have sustained the damages it suffered.

WHEREFORE, AJI demands judgment against the Defendants in the amount of not less than $2,262,146.50 in damages, the disgorgement of all legal fees paid by AJI to Defendants in connection with the Winmar Litigation, plus pre-judgment and post-judgment interest, costs of suit and such other relief as this Court may deem proper.


_____/s/  Benjamin Rosenberg_____
Benjamin Rosenberg (Bar No. 000263)
Stuart A. Cherry (Bar No. 028012)
Rosenberg, Martin, Greenberg, LLP
25 South Charles Street
21st Floor
Baltimore, Maryland  21201
410.727.6600
410.727.2115 facsimile

*Attorneys for Al Jazeera International*

ND: 4813-2088-3477