IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

AL JAZEERA INTERNATIONAL       :

                                  :

     v.                       :   Civil Action No. DKC 13-2769

                                  :

DOW LOHNES PLLC, et al.      :

                                  :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this legal malpractice case is the motion to dismiss filed by Defendants Dow Lohnes PLLC and Leslie H. Wiesenfelder. (ECF No. 19). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Defendants' motion will be denied.

I.   **Background**[1]

In 2005, Plaintiff Al Jazeera International ("AJI") entered into a construction contract with Winmar, Inc. to build a television studio and offices in Washington, D.C. ("the Contract"). Janson Design Group ("the Architect") was the architect for the project. The Contract established a payment process under which Winmar would submit periodic invoices for review by the Architect as AJI's agent. If the Architect was satisfied, it would issue certificates of payment to AJI.

---

[1] The following facts are set forth in the complaint. (ECF No. 1).

Between October and December 2005, Winmar submitted four invoices totaling $1,838,140.  The Architect certified each of these four invoices.  AJI alleges that the Architect breached the duty of care owed to it by not taking reasonable steps to determine whether the invoices were accurate and complete.  AJI paid only one of the invoices, in the amount of $474,677.  Winmar sent AJI a notice of default and direction to cure alleging that AJI was in material breach of the Contract for failing to pay the remaining certified invoices.  AJI engaged a construction manager to resolve the disputed billing issues.  The construction manager concluded that Winmar overbilled AJI.  Consequently, AJI made no further payments.  The Architect sent a letter to Winmar, rescinding its certification for the three remaining invoices, stating that the certifications had been made in error and were withdrawn on account of "a number of discrepancies in the . . . Application documents, as well as the lack of appropriate supporting documentation."  The Architect asked Winmar for additional documents supporting the invoices, which Winmar refused to provide.  Thereafter, pursuant to Section 14 of the Contract, AJI terminated the contract for convenience.

On July 24, 2006, AJI's bank, Qatar National Bank, filed suit against Winmar in the United States District Court for the District of Columbia.  Winmar filed a third-party complaint

against AJI, alleging that AJI breached the Contract by not making payment pursuant to the Architect's certifications. AJI retained Defendants to represent it and filed a counterclaim against Winmar, denying any liability and asserting that AJI had overpaid Winmar pursuant to the termination for convenience provisions of the Contract. In its answer, Winmar alleged that, prior to the time AJI terminated the Contract for convenience, AJI had materially breached the Contract and, therefore, Winmar was entitled to the full amount of every invoice certified by the Architect. AJI alleges that this raised a substantial material issue regarding the accuracy of the Architect's certification. Despite this fact, Defendants failed to investigate the Architect's role in the events, including whether the Architect breached its duty of care. By ignoring Winmar's allegations regarding the Architect, Defendants left AJI with no factual defense to Winmar's principal claim: *i.e.*, that the certifications were *prima facie* evidence of the amount AJI owed Winmar. Consequently, Defendants were completely unprepared at trial, leaving AJI greatly exposed. The trial began on June 30, 2010. Winmar continually raised the certifications, but Defendants offered no rebuttal. On September 29, 2010, the district court issued a memorandum opinion and order, granting judgment in favor of Winmar and against AJI. *Winmar, Inc. v. Al Jazeera Int'l*, 741 F.Supp.2d

165 (D.D.C. 2010).   Judge Gladys Kessler concluded that the Architect's certifications were the best evidence of the work performed.   The court went on to note that "Al Jazeera offered no evidence at trial showing how the Architect arrived at the decision to certify the Payment Applications. . . .   In the absence of any evidence from Al Jazeera *that the Architect neglected its duties* under the Contract in making the certification decisions, the certified Payment Applications are the most reliable evidence of the services performed by Winmar in the periods covered."   (ECF No. 1 ¶ 36 (emphasis added by AJI)).   Judge Kessler also stated that she "has never been able to understand why neither party ever called the Architect to testify."   (*Id.* ¶ 37).   Judgment was granted in favor of Winmar and against AJI for $1,472,625.50.   Defendants appealed the judgment to the United States Court of Appeals for the District of Columbia Circuit.   While that appeal was pending, AJI decided to settle the dispute for $2,000,000 rather than run the risk of an unfavorable outcome on appeal.[2]

On September 19, 2013, Plaintiff filed a complaint in this court for legal malpractice, citing diversity jurisdiction.

---

[2] Beyond the $1.4 million judgment, AJI was also separately assessed attorneys' fees; post-judgment interest was also accruing while the appeal was pending.   Plaintiff represents that it was facing a final judgment of more than $3,000,000 if the appeal was unsuccessful.

(ECF No. 1).[3]   Plaintiff alleges that Defendants, as AJI's attorney during the Winmar litigation, owed AJI a duty of care to conduct a thorough and competent investigation of the facts and circumstances surrounding AJI's dispute with Winmar, and to exercise sound and reasonable judgment in planning and executing a defense to Winmar's claims against AJI.   According to Plaintiff, Defendants breached this duty by ignoring Winmar's allegations regarding the Architect's certificates of payment and failing to depose the Architect or calling the Architect as a witness at trial.   Plaintiff contends that but for Defendants' failure to depose or call the Architect as a witness, AJI would have prevailed in the Winmar litigation.   In the alternative, Plaintiff maintains that Defendants breached the duty of care by failing to advise AJI to join the Architect as a third-party defendant in the Winmar litigation.   Defendants' breach left AJI with no defense to Winmar's claims regarding the Architect's payment certifications.

On November 18, 2013, Defendants filed a motion to dismiss. (ECF No. 7).   On December 31, 2013, Plaintiff opposed the motion (ECF No. 10), to which Defendants replied on January 28, 2014 (ECF No. 13).

---

[3]   Plaintiff is a corporation organized under the laws of Qatar with its principal place of business in Qatar.   Defendants are residents of the District of Columbia and Maryland.   The amount in controversy exceeds $75,000.

## II.  Standard of Review

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint.  *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006).  A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007).  That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff.  *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (*citing Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).  In evaluating the complaint, unsupported legal allegations need not be accepted.  *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989).  Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S.

at 678, as are conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

### III. Analysis[4]

"To prove legal malpractice under D.C. law, a plaintiff must (a) show an applicable standard of care; (b) prove a breach of that standard; and (c) demonstrate a causal relationship between the violation and the harms enumerated in the complaint." *Jones v. Lattimer*, --- F.Supp.2d ----, 2014 WL 869470, at *3 (D.D.C. Mar. 6, 2014) (*quoting In re Estate of Curseen*, 890 A.2d 191, 193 (D.C. 2006) (internal quotation marks omitted)). Plaintiff alleges legal malpractice in two forms: first, Defendants' failure to advise Plaintiff to sue the Architect, and second, if it was not advisable to sue the Architect, Defendants' failure to interview, depose, or call the Architect as a witness in the Winmar litigation.

---

[4] When choosing the applicable substantive law while exercising diversity jurisdiction, a federal district court applies the choice of law rules of the forum state. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941). For tort claims such as this one for legal malpractice, Maryland generally adheres to the *lex loci delicti commissi*, or place of harm, principle to determine the applicable state's substantive law. *Hauch v. Connor*, 295 Md. 120, 123-24 (1983). Defendants submit that the harm occurred when they either failed to call the Architect as a witness in the Winmar litigation in the District of Columbia district court, or failed to sue the Architect in the same court. Plaintiff does not dispute this contention. Therefore, the situs of the tort is the District of Columbia and its substantive law applies to the claims at issue.

## A.    Failure to Sue the Architect

Defendants argue that Plaintiff has not pled that AJI had a viable claim against the Architect.   District of Columbia law requires a plaintiff pursuing a claim for legal malpractice to demonstrate that he had a viable claim that the attorney negligently failed to pursue.  *Niosi v. Aiello*, 69 A.2d 57, 60 (D.C. 1949) ("The rule to be applied in a case where an attorney is accused of negligence in the conduct of litigation is that such attorney is not liable for negligence if, notwithstanding the negligence, the client had no cause of action or meritorious defense as the case may be.").   As explained in *Macktal v. Garde*, 111 F.Supp.2d 18, 21 (D.D.C. 2000):

> The clear rule of *Niosi* and its progeny is that in order to maintain a legal malpractice action in the District of Columbia, plaintiff must demonstrate not only that the alleged malpractice was the proximate cause of the injury suffered, but also that the action for which the plaintiff had sought the attorney's services was a good cause of action.  Thus the Court must evaluate the so-called "case within the case" to determine if it was a good cause of action.  If the case within the case was not a good cause of action, then the claim of professional malpractice must fail.  This standard requires a plaintiff to demonstrate that his underlying case would have succeeded absent the alleged malpractice.

Plaintiff contends that it has pled sufficiently that it had a good cause of action against the Architect for breach of its duty of care to Plaintiff in reviewing and certifying

invoices submitted by Winmar. According to Plaintiff, the Architect breached this duty by not taking reasonable steps to determine whether Winmar's invoices were accurate before certifying them on December 7, 2005. Plaintiff justifiably relied on the certifications in making the $474,677 payment on December 12, 2005 and, but for the certifications, would not have made the payment. The Architect later admitted these certifications were in error. The certifications led directly to the litigation with Winmar, in which Judge Kessler found AJI to be in material breach of the Contract for not making the certified payments.

### 1. Issue Preclusion

Defendants contend that Judge Kessler's decision determining that the certifications were credible and reliable precludes these claims. Issue preclusion is an affirmative defense which the defendant bears the burden of establishing. Consequently, "a motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6), . . . generally cannot reach the merits of an affirmative defense[, except] in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint." *Goodman v. Praxair, Inc.*, 949 F.3d 458, 464 (4th Cir. 2007). In other words, "[i]n the limited circumstances where the allegations of the complaint give rise to an affirmative defense, the defense

may be raised under Rule 12(b)(6), but only if it clearly appears on the face of the complaint" and any other documents proper for consideration. *Richmond, Fredericksburg & Potomoac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993). "[W]hen entertaining a motion to dismiss on the ground of *res judicata*, a court may take judicial notice of facts from a prior judicial proceeding when the *res judicata* defense raises no disputed issue of fact." *Brooks v. Arthur*, 626 F.3d 194, 200 (4th Cir. 2010).

The elements that must be fulfilled for issue preclusion to bar an issue or fact are as follows:

> The proponent must demonstrate that (1) the issue or fact is identical to the one previously litigated; (2) the issue or fact was actually resolved in the prior proceeding; (3) the issue or fact was critical and necessary to the judgment in the prior proceeding; (4) the judgment in the prior proceeding is final and valid; and (5) the party to be foreclosed by the prior resolution of the issue or fact had a full and fair opportunity to litigate the issue or fact in the prior proceeding.

*In re Microsoft Antitrust Litig.*, 3355 F.3d 322, 326 (4th Cir. 2004). Defendants have not demonstrated that issue preclusion applies here. Judge Kessler only *presumed* that the Architect's certifications were credible. Numerous times she spoke of the Architect's certifications as creating a *rebuttable* presumption of the work Winmar performed, a presumption that Defendants - as

Al Jazeera's counsel - never attempted to rebut, which constitutes one of the theories of alleged legal malpractice. *See Winmar*, 741 F.Supp.2d at 182 ("Al Jazeera bears the burden of rebutting the presumption of the certified Payment Applications' accuracy by presenting evidence that they were prepared incorrectly.")  By Defendants' logic, an unfavorable judicial decision allegedly wrought by their legal malpractice can be used as a shield against a legal malpractice claim.  Not surprisingly, Defendants do not provide a case utilizing issue preclusion in this fashion and it is not appropriate for a Rule 12(b)(6) motion.

> **B.  The Architect's Prompt Correction**

Defendants' second argument is that Plaintiff has no viable claim against the Architect because the Architect properly and promptly corrected any error it may have made by timely rescinding the certifications long before Winmar instituted litigation.  Defendants acknowledge that Judge Kessler rejected the Architect's rescission, but argue that her conclusion that the Contract did not permit such a rescission was erroneous. Defendants contend that those rescissions were valid per the terms of the Contract, which provides that a claim may be submitted to the Architect to settle disputes between Al Jazeera and Winmar arising out or relating to the Contract, including those alleging error by the Architect.  Defendants argue that

Judge Kessler's conclusion that the Architect's rescission was without legal force because it could not require supporting documentation after certifying the invoices is contradicted by the clear terms of the Contract.  Had Judge Kessler interpreted the Contract correctly, according to Defendants, she would have honored the rescissions and AJI would have suffered no injury even if the Architect had improvidently issued the certifications.  Defendants represent that they raised this issue on appeal on behalf of AJI, but AJI abandoned that appeal in light of settlement.

This argument depends on materials not included in the complaint and while a court can take judicial notice of court records for some purposes, Defendants' contentions go too far.  Defendants ask the court on a Rule 12(b)(6) motion to go beyond merely noting Judge Kessler's decision to determine whether it precludes Plaintiff's claims, but engage in essentially a *de novo* review of that decision.  Such a review is not appropriate at the motion to dismiss stage.[5]

---

[5]  Relatedly, Defendants' argument concerning statute of limitations will be rejected at this time.  The statute of limitations is an affirmative defense that should only be employed to dismiss claims pursuant to Rule 12(b)(6) when it is clear from the face of the complaint that the claims are time barred.  *See Eniola v. Leasecomm Corp.*, 214 F.Supp.2d 520, 525 (D.Md. 2002).  Unlike a typical statute of limitations situation, where the various dates are part of the factual pleadings, here the question of when the limitations period begins to run depends on whether Plaintiff was injured by the

**C.   Failure to Interview, Depose, or Call the Architect as a Witness**

**1.   Failure to Plead with Particularity**

Plaintiff argues that it was also legal malpractice for Defendants not to interview, depose, or call the Architect as a witness in order to discover whether a representative of the firm would have had any testimony that would have aided Plaintiff's defense.   Defendants argue that even assuming they breached their duty, Plaintiff has failed to plead causation sufficiently: namely that the Architect's testimony would have changed Judge Kessler's decision.   A plaintiff pursuing a legal malpractice claim must show that the outcome of the underlying litigation would have been more favorable to it absent its counsel's alleged negligence.   *Hickey v. Scott*, 796 F.Supp.2d 1, 4 (D.D.C. 2011).   Defendants contend that Plaintiff's allegation "[b]ut for Defendants' failure to depose or call the Architect as a witness, AJI would have prevailed in the Winmar Litigation" (ECF No. 1 ¶ 48) is conclusory and speculative, failing short of demands of Fed.R.Civ.P. 8(a).   According to Defendants, it is not enough to allege that it should have called a representative of the Architect as a witness; Plaintiff must also allege that

---

Architect's improper certifications or, alternatively, by Judge Kessler's decision relying on those certifications in computing the amount Plaintiff owed to Winmar.   That depends, at least in part, on the soundness of Judge Kessler's decision which, for reasons discussed above, will not be considered at this stage.

the missing testimony would have changed the course of trial. They assert that Plaintiff cannot make this allegation without supplying the missing testimony, which it fails to do, and that absent that testimony, the court is required to speculate as to what the Architect would have said that would have changed the judge's mind.

Defendants' arguments will be rejected. Admittedly, the causation argument here is more tenuous as it is built on a series of suppositions: *if* Defendants would have interviewed the Architect, they *might* have discovered that a representative of the Architect would have been a favorable witness, which *may* have sufficiently convinced Judge Kessler that AJI should prevail. But given that Plaintiff's other theory of malpractice is not being dismissed, it is not appropriate to dismiss this theory presently.

Defendants point to *Bigelow v. Knight*, 737 F.Supp. 669 (D.D.C. 1990), in support of their position, but that case is not analogous to the situation here. In *Bigelow*, the plaintiff alleged that his counsel failed to call two alibi witnesses and failed to interview a third unnamed witness. The district court dismissed the complaint, finding that the

> plaintiff essentially alleges only vague and
> general failures of the defendant to locate
> and interview witnesses who would have
> "render[ed] suitable support for a defense."
> Plaintiff fails to identify what these

14

> witnesses would have testified to and how
> they would have supported a defense which
> would have resulted in his acquittal.
> Accordingly, this Court rules that the
> plaintiff has failed to assert a legally
> cognizable harm which is an essential
> element of his claim and his complaint must
> be dismissed.

*Id.* at 671.  This case can be distinguished on many grounds.
First, the court initially noted that the plaintiff failed to
allege the domicile and citizenship of the parties necessary to
establish subject-matter jurisdiction *via* diversity.  Because
the court found that it did not have subject-matter
jurisdiction, all subsequent legal conclusions were *dicta*.
Furthermore, the *Bigelow* plaintiff had already raised these
issues as part of his collateral attack on his criminal
conviction alleging ineffective assistance of counsel.
Consequently, his claim was barred by collateral estoppel.
Indeed, the few cases that have cited to *Bigelow* have used it
for this proposition.  *See, e.g., Brodie v. Jackson*, 954
F.Supp.2d 31, 37-38 (D.D.C. 2013).  The one case to cite *Bigelow*
outside the collateral estoppel context concerned a motion for
summary judgment, not a motion to dismiss.  *See Williams v.
Callaghan*, 938 F.Supp. 46, 50 (D.D.C. 1996).  Finally, and most
importantly, *Bigelow* concerned counsel's performance in a
criminal trial that resulted in a conviction.  To prove
causation the plaintiff had to demonstrate that but-for his

counsel's negligence, the outcome of his trial would have been different: *i.e.*, he would have been acquitted as opposed to convicted.   In this case, by contrast, Defendants' alleged negligence concerning the Architect was the but-for cause of the *damages* it was forced to pay following Judge Kessler's ruling. The inclusion of the Architect and the firm's explanation of the initial certifications and the decision to rescind may have caused Judge Kessler to give less weight to those certifications as evidence of the work done by – and therefore money owed to – Winmar, possibly resulting in a lesser judgment against AJI. *See Seed Co., Ltd. v. Westerman*, 840 F.Supp.2d 116, 125 (D.D.C. 2012) ("Although the plaintiff must prove causation, this element is usually a question for the jury and only an issue of law if there are no facts or circumstances from which a jury could reasonably determine that such negligence was the proximate cause of injury." (*citing Bragg v. Owens-Corning Fiberglas Corp.*, 734 A.2d 643, 648 (D.C. 1999))).

**2.   No Testimony Would Have Plausibly Changed Judge Kessler's Decision**

Defendants' next argument is that the situation as alleged by Plaintiff does not demonstrate that it is plausible that any testimony offered by the Architect would have changed Judge Kessler's decision.   They first point out that Judge Kessler decided not to credit the Architect's rescissions based on a

conclusion of *law*, specifically the meaning of the Contract. Defendants argue that that legal conclusion was erroneous and, because Judge Kessler based most of her calculations on those erroneous certifications, if she accorded the rescissions the legal validity they were entitled to, AJI would have owed Winmar nothing because Winmar did not submit any evidence at trial regarding most of the work completed, instead relying on the certifications.

Again, this argument requires parsing Judge Kessler's ruling which, for reasons outlined above, will not be done on a motion to dismiss.

### 3.   The Decision is Entitled to Judgmental Immunity

Defendants argue that the strategic decision not to interview, depose, or call the Architect is entitled to "judgmental immunity." The judgmental immunity doctrine recognizes that an attorney is not liable for mistakes made in the honest exercise of professional judgment. *See Nat'l Sav. Bank v. Ward*, 100 U.S. 195 (1879). District of Columbia law has adopted the judgmental immunity doctrine. *Biomet Inc. v. Finnegan Henderson LLP*, 967 A.2d 662, 666 (D.C. 2009). "Essentially, the judgmental immunity doctrine provides that an informed professional judgment made with reasonable care and skill cannot be the basis of a legal malpractice claim." *Id.* This is not to say that a lawyer can never be held liable for

17

any of his actions in relation to a trial: non-liability for strategic decisions "is conditioned upon the attorney acting in good faith and upon an informed judgment after undertaking reasonable research of the relevant legal principals and facts of the given case." *Id.* (*quoting Sun Valley Potatoes, Inc. v. Rosholt, Robertson & Tucker*, 133 Idaho 1, 5 (1999)).

Judgmental immunity is an affirmative defense. *See Jones*, 2014 WL 869470, at *4 ("an attorney sued for legal malpractice [may] prevail on grounds of 'judgmental immunity,' upon demonstrating 'that (1) the alleged error is one of professional judgment, and (2) the attorney exercised reasonable care in making his or her judgment.' . . . [A]n attorney in a legal malpractice suit must still prove that he or she 'exercised reasonable care.'" (*quoting Biomet*, 967 A.2d at 666)). Facts demonstrating that Defendants exercised reasonable care do not appear on the face of the complaint; in fact, Plaintiff alleges just the opposite. Defendants are once again attempting to adjudicate an issue more appropriate for a summary judgment motion than the present motion to dismiss.

### D.   Plaintiff Waived Its Claim By Settling the Case

Defendants' final argument is that AJI's settlement of the Winmar litigation while the appeal was pending waived its

malpractice claim.[6]   Waiver, too, is an affirmative defense, making it unlikely to appear on the face of a complaint.

Defendants cite to three cases – two from Ohio and one from Florida – for the proposition that "the settlement of the underlying . . . case, while the appeal was pending, constituted an abandonment of any claim that [plaintiff's] loss resulted from legal malpractice rather than judicial error." *Pa. Ins. Guar. Ass'n v. Sikes*, 590 So.2d 1051, 1053 (Fla.App. 3 Dist. 1991); *see also Estate of Callahan v. Allen*, 97 Ohio App.3d 749, 752-53 (Ohio App. 4 Dist. 1994); *Sawchyn v. Westerhaus*, 72 Ohio App.3d 25, 28-29 (Ohio App. 8 Dist. 1991).   From this, Defendants argue that the proper vehicle for AJI to challenge Judge Kessler's unfavorable ruling was to pursue its appeal to the D.C. Circuit, not to file a malpractice suit.

As Plaintiff points out, however, this principle is quite limited and has never been adopted by the D.C. courts.   Courts in both Ohio and Florida have subsequently pointed out that "a legal malpractice claim is not barred when the attorney has acted unreasonably or has committed malpractice *per se*.   When an attorney has made an obvious error which seriously compromises his client's claim, and a settlement is on the table, the client should not be forced to forego the settlement offer as a

---

[6]   The complaint acknowledges that Plaintiff abandoned its appeal to the D.C. Circuit.   (ECF No. 1 ¶¶ 40-42).

condition of pursuing the attorney for malpractice." *E.B.P.,*
*Inc. v. Cozza & Steuer*, 119 Ohio App.3d 177, 182 (Ohio App. 8
Dist. 1997); *see also Eastman v. Flor-Ohio, Ltd.*, 744 So.2d 499,
502 (Fla.App. 5 Dist. 1999) ("A close reading of the *Sikes*
opinion reveals that the third district recognized that the
vital element presented by the facts in that case was that the
alleged error upon which the insurance company's entire claim of
legal malpractice was based . . . turned out to be an error made
by the trial court which would have been corrected had the
appeal not been dismissed."); *Segall v. Segall*, 632 So.2d 76, 78
(Fla.App. 3 Dist. 1993) ("We are unable to establish a bright-
line rule that complete appellate review of the underlying
litigation is a condition precedent to every legal malpractice
action.  To do so would, in many cases, violate the tenet that
the law will not require the performance of useless acts.");
*Crestwood Cove Apartments Bus. Trust v. Turner*, 164 P.3d 1247,
1251-53 (Utah 2007) (analyzing cases invoking the abandonment
theory and finding that they were principally focused on issues
of causation: *i.e.*, the harm caused to plaintiff was from
judicial error, not counsel negligence).  While an argument
could be made that an error by Judge Kessler rather than
Defendants' negligence caused some of the damages, the failure
to interview the Architect – and the allegedly higher damage
amount that resulted from the failure to introduce the firm's

testimony – nevertheless could have resulted from negligence by Defendants.  Consequently, based on Plaintiff's allegations, the losses sustained for failure to interview the Architect are attributable to Defendants.  *See Monastra v. D'Amore*, 111 Ohio App.3d 296, 302 (Ohio App. 8 Dist. 1996) ("If the evidence should show that Monastra's defective representation diminished D'Amore's ability to reach a successful settlement or succeed at trial, we see no reason why a waiver of that malpractice claim should be implied by reason of the settlement.").  As Defendants have not shown conclusively that Plaintiff's decision to settle the case while on appeal waived its legal malpractice claim, Plaintiff's claims will proceed.

## IV.  Conclusion

For the foregoing reasons, Defendants' motion to dismiss will be denied.  A separate order will follow.

/s/
_____
DEBORAH K. CHASANOW
United States District Judge

21